IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ZACKERY REID, | |
| Plaintiff, | Civil Action No.: |
| v. | 5:20-cv-00437 |
| ACE HARDWARE OF GRAY, INC., | |
| Defendant. | **JURY TRIAL DEMANDED** |

**COMPLAINT**

COMES NOW, Plaintiff Zackery Reid, and brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. Plaintiff alleges that Defendant Ace Hardware of Gray, Inc. subjected Plaintiff to retaliation after he engaged in protected activities, showing the Court as follows:

**JURISDICTION AND VENUE**

1.

This Court has original jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

2.

Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) because Plaintiff was employed and the events underlying this action occurred in Jones County, Georgia, which is located in this judicial district.

## PARTIES

3.

Plaintiff Zackery Reid (hereinafter, "Plaintiff" or "Reid") is a citizen of the United States and a resident of Georgia. At all times relevant to this suit, Mr. Reid was employed with Defendant Ace Hardware of Gray, Inc., located at 243 West Clinton Street, Gray, Jones County, Georgia 31032.

4.

At all relevant times, Mr. Reid was considered a covered employee under Title VII of the Civil Rights Act.

5.

Defendant Ace Hardware of Gray, Inc. (hereinafter, "Defendant") is a domestic profit corporation, incorporated under the laws of the State of Georgia.

6.

Defendant's principal office address is P.O. Box 1449, Gray, Jones County, Georgia 31032, and Defendant may be served with process through its registered agent, Frank Davis at 100 Dolly Street, Gray, Georgia 31032.

7.

Defendant is a private employer engaged in interstate commerce, with annual revenue in excess of $500,000. Defendant has more than fifteen employees who have worked for at least twenty calendar weeks in 2020 and proceeding years. Defendant is a covered entity and employer within the meaning of Title VI of the Civil Rights Act.

## STATEMENT OF FACTS

8.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 7, as if the same were set forth herein.

9.

Mr. Reid began his employment with Defendant in or around September 2017, where he worked as a part-time employee.

10.

In or around Spring 2018, Defendant hired Kelly Thompson to serve as the Manager of the Plant Nursery.

11.

In November 2018, Mr. Reid began full-time employment as a Nursery Attendant in the Plant Nursery department of Defendant's store.  This began the first time that Mr. Reid regularly interacted with Plant Manager Thompson, who became his supervisor.

12.

From his first interactions with Plant Manager Thompson, Mr. Reid found that Plant Manager Thompson would regularly, and on a daily occasion, make inappropriate and derogatory comments to subordinate employees, especially those who were Mr. Reid's age and younger.

13.

For example, in Plant Manager Thompson's very first conversations or interactions with Mr. Reid, he referred to Mr. Reid as a "pussy."

14.

Mr. Reid also overheard Plant Manager Thompson speaking to a young female employee

in which Plant Manager Thompson explained how he was on a fence when he slipped. Plant Manager Thomson then described an injury to his genital area in graphic detail.

15.

Plant Manager Thompson would often make sounds, such as groans and grunts, which he clearly intended to immolate sounds associated with sexual intercourse.

16.

As the 2018 Christmas holiday season approached, Mr. Reid observed Plant Manager Thompson greeting customers at the entrance to the store and standing under mistletoe. When one female customer came into the store, Plant Manager Thompson got her attention, pointed upward toward the mistletoe, and kissed the customer on the cheek. It was apparent from her reaction that the customer did not welcome this contact.

17.

On yet another occasion around December 2018, Plant Manager Thompson observed a female customer breastfeeding her child. The Plant Manager made a point to go out of his way, approach the customer, offer his assistance while continuing to speak with her, all while using this opportunity to stare at the customer's semi-exposed breast.

18.

On a frequent and daily basis, when certain customers came into the store, Plant Manager Thompson would tell his subordinates that he was sexually attracted to the customer.

19.

On another occasion, Plant Manager Thompson saw Mr. Reid struggling to install a patio umbrella for a display. As Mr. Reid struggled to insert the pole of the umbrella into the center hole of the patio table, Plant Manager Thompson made the same grunting and moaning noises that

he used to mimic sounds associated with sexual intercourse.  Once Mr. Reid was finally able to install the umbrella, Plant Manager Thompson suggested that this was indicative of his sexual abilities, telling Mr. Reid that must be why Mr. Reid's girlfriend came into the store happy all the time.

20.

Around the same time, Mr. Reid and Plant Manager Thompson were watering plants in the outdoor nursery when two young females were walking by on the sidewalk just outside of the store.  The girls had clearly just left school as they were wearing bookbags and could be heard discussing their classes.  When one of the girls abruptly make a squealing noise, Plant Manager Thompson said to Mr. Reid, "they shouldn't be screaming like that unless they are in my bed."

21.

Mr. Reid responded to Plant Manager Thompson in disgust, saying, "dude, they are like fifteen years old!" Plant Manager Thompson's only response to Mr. Reid's comment was to laugh.

22.

On another occasion in December 2018, Mr. Reid learned that Plant Manager Thompson had taken photographs of a young female employee, without her permission.  In several conversations with other employees, including one with Mr. Reid, Plant Manager Thompson bragged that he had saved these pictures on his mobile phone, suggesting that he was attracted to the employee and was keeping them to satisfy some sexual desire.

23.

The employee who was subject to the photos later became upset when she found out that Plant Manager Thompson had taken and retained them, apparently because Plant Manager Thompson had previously made sexual advances toward her and even invited her to his house.

24.

Mr. Reid, along with other employees and customers, expressed to Plant Manager Thompson that the aforementioned conduct was unwelcome and asked him to stop.

25.

There were even several regular customers who expressed their unwillingness to shop in the store at any time while Plant Manager Thompson was working.

26.

However, Plant Manager Thompson continued his use of offensive and abusive and conduct and he continued to make sexual comments on a routine and daily basis.

27.

By January 2019, Plant Manager Thompson's conduct had caused Mr. Reid to feel very uneasy and uncomfortable at work. Mr. Reid extremely disliked working with Plant Manager Thompson and tried to avoid being scheduled to work on shifts together.

28.

It was apparent to Mr. Reid, both from his observations and comments made to him, that many of his coworkers felt the same way about Plant Manager Thompson and the work environment as Mr. Reid.

29.

By this point, Plant Manager Thompson's conduct had changed and altered the working conditions of Mr. Reid and his coworkers.

30.

One day in January 2019, Mr. Reid asked to speak with Store Manager Christopher Davis in the nursery. When Store Manager Davis arrived, Mr. Reid told him about the Plant Manager

taking and keeping pictures of Mr. Reid's female coworker, Plant Manager Thompson's inappropriate comments and conduct toward female customers, and the inappropriate comments of a sexual or derogatory nature that Plant Manager Thompson made to Mr. Reid and others.

31.

Store Manager Davis appeared uncomfortable to hear this information, which lead Mr. Reid to believe that this may not have been the first time that Plant Manager Thompson's conduct had been reported to the Store Manager.

32.

Store Manager Davis responded, "if nobody's filing a complaint, there's nothing I can do about it." The Store Manager also mentioned the fact that sales had increased since Plant Manager Thompson had been hired.

33.

Mr. Reid then responded that he was "filing a complaint," to which the Store Manager simply stated that he would talk to the Plant Manager. The Store Manager changed the subject.

34.

After Mr. Reid's report, it initially appeared that Plant Manager Thompson conduct and treatment of Mr. Reid had initially improved.

35.

While Store Manager Davis had previously referred to Mr. Reid as his favorite employee and someone who went "above and beyond," both his attitude toward Mr. Reid and that of his father, the owner, became icy.

36.

Upon information and belief, Store Manager Davis spoke to Plant Manager Thompson

about his inappropriate conduct and, after that conversation, the Plant Manager became hostile to several individuals that he presumably believed had reported him. During that period, Plant Manager Thompson remained friendly with Mr. Reid, yet continued to make inappropriate comments to him.

37.

However, two to three weeks later, around mid-February 2019, Plant Manager Thompson began targeting and harassing Mr. Reid. This is because Plant Manager Thompson had learned that it was Mr. Reid who made the complaint about his conduct.

38.

The Plant Manager soon began cutting the hours in which Mr. Reid was being assigned to work.

39.

On another occasion, Mr. Reid requested that he be released from work 45 minutes early to be with his grandfather, who was in the hospital after suffering a heart attack. Plant Manager Thompson denied the request, saying, "he will be okay for another 45 minutes."

40.

Mr. Reid then began being frequently denied breaks, including those for lunch.

41.

Mr. Reid would frequently get chastised by Plant Manager Thompson for the manner he accomplished tasks, even though it was precisely how he had been instructed by the Plant Manager.

42.

In February 2019, Plant Manager Thompson had one of his friends file a fraudulent customer complaint against Mr. Reid. This was the first time that Mr. Reid had received a

complaint from any customer while working for Defendant, and Mr. Reid was not even working on the day that the customer said they had been in the store.

43.

Several times, Plant Manager Thompson openly encouraged Mr. Reid to look for another job.

44.

Around the same time, another supervisor told Mr. Reid that it was apparent to him that Store Manager Davis was trying to get Mr. Reid to leave his job.

45.

This treatment continued from mid-February through mid-April, but Mr. Reid continued to try to go to work, do his best, and enjoy his job again.

46.

On or about April 20, 2019, Mr. Reid contacted Store Manager Davis in an attempt to call out of work for the day due to a family emergency. The Store Manager responded to the text message approximately one hour later, writing that Plant Manager Thompson had told him that Monday, April 22, 2019, would be Mr. Reid's last day. The Store Manager also said that Mr. Reid should not bother coming to work at all.

47.

Mr. Reid had never expressed any intent to end his employment and he was apparently involuntarily terminated by the Plant Manager and Store Manager.

48.

In his April 20th text message response, the Store Manager said that Mr. Reid should not use Defendant as a reference.

49.

After Mr. Reid's termination, he submitted employment applications with dozens of other employers in which Defendant was listed under his work history.  Mr. Reid did not receive call-backs from any of these prospective employers, even for positions were he far exceeded the requirements, qualifications, or experience.

50.

Upon information and belief, Defendant was contacted by Mr. Reid's prospective employers and actively encouraged the employers to deny Mr. Reid's applications.

51.

This would be consistent with Store Manager Davis' threat to Mr. Reid on April 20, 2019.

Procedural/Administrative Background

52.

On or about September 17, 2019, Mr. Reid submitted his Charge of Discrimination to the Equal Employment Opportunity Commission (hereinafter, "EEOC") (Charge No. 410-2019-08869).

53.

On August 21, 2020, Mr. Reid received a Dismissal and Notice of Rights from the EEOC, which was dated August 19, 2020.

**COUNT I:
RETALIATION
IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**

54.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 53, as if the same were set forth herein.

55.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate against or harass any of its employees because an employee has opposed any practice made unlawful by Title VII.  42 U.S.C. § 2000e-3(a).

56.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under Title VII, respectively, *See* 42 U.S.C. §§ 2000e & 2000e-1.

57.

During his employment with Defendant, Plaintiff's supervisor subjected Plaintiff to sexually-based conduct that was both severe and pervasive enough to change the working conductions and unwelcomed by Plaintiff.

58.

During his employment with Defendant, Plaintiff both observed and learned of his supervisor subjecting other employees and customers to sexually-based conduct that was both severe and pervasive enough to change the working conductions and unwelcomed by the employees and customers.

59.

Plaintiff had a reasonable, good faith belief that his supervisor's conduct was actionable sexual harassment.

60.

Plaintiff's supervisor's conduct toward him and others was actionable sexual harassment.

61.

Plaintiff opposed his supervisor's conduct by requesting that the supervisor cease the behavior.

62.

Plaintiff opposed his supervisor's conduct by reporting the conduct to an individual in management.

63.

An employee, who complains about the type of harassment alleged, is opposing a practice made unlawful by Title VII of the Civil Rights Act and is, therefore, engaged in a "protected activity."

64.

After Plaintiff opposed the harassment, he was subjected to materially adverse actions, such as being subjected to additional harassment, being denied requests for leave or other relief, being denied breaks that he was entitled, having fraudulent customer complaints filed against him, being encouraged to resign from his position, and ultimately being involuntarily terminated from his position.

65.

As alleged herein, the aforementioned adverse actions only began after Plaintiff opposed his supervisor's harassment.  For this reason, amongst others, these adverse actions only occurred because of Plaintiff's participation in protected activities.

66.

After Defendant terminated Plaintiff, Defendant actively interfered with Plaintiff's efforts to gain employment with third-parties, which constitutes distinct materially adverse actions.

.

67.

Defendant's conduct, as alleged, herein constitutes retaliation in violation of Title VII of the Civil Rights Act.

68.

Defendant is unable to articulate any legitimate, nondiscriminatory or nonretaliatory reason for the conduct.

69.

Plaintiff has been injured by Defendant's retaliation of him, and Plaintiff is entitled to all damages allowed under Title VII of the Civil Rights Act, including back pay, front pay and injunctive relief, compensatory and punitive damages at the statutory limit, and reasonable attorney's fees and costs of litigation, all in an amount to be proven at trial.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Zackery Reed respectfully prays for the following relief:

1) That Summons and Process be issued to Defendant Ace Hardware of Gray, Inc., and that said Defendant be served as provided by law;

2) That this matter be tried before a jury;

3) That judgment be awarded for and in favor of Plaintiff and against Defendant on Count I for retaliation in violation of Title VII of the Civil Rights Act, and grant Plaintiff all relief allowable under said law;

4)    For such other relief as this Court shall deem just and proper.

Respectfully submitted, this 17th day of November, 2020.

                                                                                    KENNETH E. BARTON III
                                                                                    Georgia Bar No. 301171
                                                                                    JOHN M. MCCALL
                                                                                    Georgia Bar No. 778954
                                                                                    *Attorneys for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com
jmm@cooperbarton.com